FILED

Chase Carmen Hunter
PO Box 42252
Fredericksburg, VA 22404
Tel: 707-706-3637
Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

UNITED STATES DISTRICT COURT FOR

MIDDLE DISTRICT OF FLORIDA

OCALA DIVISION

| | |
|---|---|
| CHASE CARMEN HUNTER, <br>        PLAINTIFF, <br><br>       v. <br><br> MITCHEL KALMANSON, INDIVIDUALLY <br> AND AS PRESIDENT OF LESTER <br> KALMANSON AGENCY, INC. <br> LESTER KALMANSON AGENCY, INC., AND <br> KAL ADJUSTING <br>       DEFENDANTS <br><br> SERVE: <br> MITCHEL KALMANSON, INDIVIDUALLY <br> AND AS PRESIDENT OF <br> LESTER KALMANSON AGENCY, INC., DBA <br> KAL ADJUSTING <br> Registered Representative: <br> CT Corporation System <br> 1712 Pioneer Ave 120 <br> Cheyenne, WY 82001 <br><br> AND <br><br> Mitchel Kalmanson DBA Kal Adjusting <br> 235 S. Maitland Ave Suite 201 <br> Maitland, FL 32751 | CASE NO. 5:14-CV-410-OC-22PRL <br> VERIFIED COMPLAINT, VERIFIED PETITION <br> FOR DECLARATORY JUDGMENT, <br> AND PERMANENT INJUNCTION <br><br><br> TRIAL BY JURY |

1. **CERTIFICATION:** I, Chase Carmen Hunter, declare under penalty of perjury that the argument and facts shown below are true and correct. _eefth_____, Executed on 7/14/14

2. **JURY DEMAND:** Hunter demands trial by jury.

### INTRODUCTION

3. Some of the issues of this lawsuit arise from, _inter alia_, common law

1

fraud, bankruptcy fraud, abuse of process, conspiracy, tortious interference, intentional infliction of emotional distress, and willful violations of

a) 18 U.S.C. § 873 (blackmail),

b) 18 U.S.C. § 875(d) (extortion),

c) Virginia Code § 18.2-47 and 18 U.S.C. § 1201 et seq. (intrastate and interstate kidnapping, respectively),

d) 18 U.S.C. §§ 1512(a)(2), 1512(b), 1512(c), 1512(d), 1513(b), 1951, 1952, and 1962 et seq. (racketeer influenced and corrupt organizations),

e) 18 U.S.C. §§ 1341 and 1343 (fraud and fraud by wire),

f) 18 U.S.C. § 1033 (crimes affecting persons engaged in the business of insurance whose activities affect interstate commerce), and

g) 15 U.S.C. §§ 1 and 2 (anti-trust and restraint of trade).

### JURISDICTION AND VENUE

4. This action arises under, _inter alia_, 42 U.S.C. §§ 1983, 1985, and 1986; 15 U.S.C. §§ 4 and 15, and 18 U.S.C. §§ 3, 4, 241, and 242.

5. This Court "may at any time make such temporary restraining order or prohibition as shall be deemed just in the premises" pursuant to 15 U.S.C. § 4.

6. 18 U.S.C. § 1034(b) allows for an injunction prohibiting violations of 18 U.S.C. § 1033.

7. This Court has jurisdiction pursuant to, _inter alia_, 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity, amount in controversy), 28 U.S.C. § 1337 (anti-trust), 28 U.S.C. § 1343 (deprivation of rights, failure to prevent such deprivation, and failure to aid in preventing such deprivation), 15 U.S.C. § 15 (suits by person injured in restraint of trade) 28 U.S.C. § 1367 (supplemental), and any other relevant authority regarding the matters set forth herein.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(b) et seq. because a) the Defendants are located in this district, can be found in this district and/or have an agent in this district, b) the substantial events that gave rise to this claim took place in this district, and c) the Defendants are subject to this court's personal jurisdiction with respect to this action.

9. This Court may issue a declaratory judgment in this case pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201-2202.

## PARTIES

10. **Chase Carmen Hunter ("Hunter")** is an individual resident of Virginia during all times relevant.

11. **Mitchel Kalmanson ("Kalmanson")** is an individual resident of Florida who is the President of Lester Kalmanson Agency, Inc. during all times relevant.

12. **Lester Kalmanson Agency, Inc. ("LKAI")**, is a Florida corporation during all times relevant.

## FACTUAL BACKGROUND

13. LKAI filed a lawsuit against Hunter (and two other non-existent entities) in Orange County Florida Circuit Court ("OCFCC") case 2009-CA-037513 in December 2009.

14. Hunter received a notice from the City of Fredericksburg, Virginia Circuit Court ("CFVCC") Clerk ("CFVCC Clerk") in June or July 2011 which indicated that a judgment lien had been filed against real estate located in the City of Fredericksburg in which Hunter had an interest.   This judgment lien arose from OCFCC in case 2009-CA-037513. This was the first time Hunter became aware of a document arising from OCFCC case 2009-CA-037513 which set forth that Hunter was indebted to LKAI and Kalmanson in the amount of nearly $10,000,000.

15. Hunter filed a timely motion to set aside ("MTSA") the OCFCC judgment in June or July 2011 in the CFVCC which was denied.

16. Hunter filed a timely appeal to the Supreme Court of Virginia ("SCV") which was denied. Hunter filed a timely petition for a writ of certiorari with the Supreme Court of the United States ("SCOTUS") which was denied.

17. In February 2012, a deputy clerk of the OCFCC remotely assisted Hunter with various searches of the OCFCC record 2009-CA-037513.  This deputy clerk also provided Hunter with a letter certified with the OCFCC seal that set forth the results of these various searches.  Hunter received this certified letter and various certified documents from the clerk of the OCFCC in March 2012. Hunter discovered, among other things, that:

a) in October 2010, an order granting a Motion To Amend the Complaint ("MTA") in OCFCC case 2009-CA-037513 was entered,

b) the order granting the MTA directed the Clerk of the OCFCC to issue a summons to the defendants so that they could respond to the order granting the MTA,

c) the order granting the MTA added Mitchel Kalmanson as a plaintiff,

d) no summons was issued to the defendants for the order granting the MTA and no defendants were served with the MTA or the amended Complaint,

e) an order of default of the amended complaint was entered in OCFCC case 2009-CA-037513 in December 2010,

f) no Affidavit of Service or other proof of service had been filed with the Clerk of the OCFCC to indicate that the defendants had been served with process of the Complaint until after April 12, 2011 [the date of the final summary judgment - see below],

g) an Affidavit of Service was filed prior to October 2010, but the substance of this Affidavit of Service established that the defendants in OCFCC had NOT been served with a summons and had not been served with the

Complaint which means that the title of this Affidavit of Service was misleading and that this document should have been correctly titled as "Affidavit of Non-Service",

h) no Affidavit of Service or other proof of service had been filed with the Clerk of the OCFCC to indicate that the defendants had been served with process of the amended complaint,

i) the record maintained by the Clerk of the OCFCC shows that no defendants made an appearance in OCFCC case 2009-CA-037513,

j) there was a document filed in OCFCC case 2009-CA-037513 on March 14, 2011, that indicates that it is a Final Judgment,

k) this March 14, 2011, document indicates that a hearing was held on March 14, 2011, in open court,

l) the record maintained by the Clerk of the OCFCC shows that no hearing was scheduled in March 2011 and no hearing was held in March 2011,

m) there are no court minutes and no transcripts for this alleged hearing of March 14, 2011. Further, this document was <u>filed</u> by the plaintiffs and was not an order <u>entered</u> by the judge,

n) there was a document filed in OCFCC case 2009-CA-037513 on April 12, 2011, that indicates that it is a Final Summary Judgment which was based on the amended complaint,

o) this April 12, 2011, document indicates that a hearing was held on April 12, 2011, in open court,

p) the record maintained by the Clerk of the OCFCC shows that no hearing was scheduled in April 2011 and no hearing was held in April 2011. There are no court minutes and no transcripts for this alleged hearing of April 12, 2011. Further, this document was <u>filed</u> by the plaintiffs and was not an order <u>entered</u> by the judge. This document indicates that LKAI obtained a judgment of nearly $10,000,000 against the defendants.

18. Hunter's appeal of the CFVCC denial of her MTSA was timely filed with the SCV and was pending through June 2012. Beginning in March 2012, Hunter filed various papers in the CFVCC setting forth the various reasons why Hunter was entitled as a matter of law to a right to enjoy the void judgment that arose from OCFCC.

19. But the plaintiffs in OCFCC [who are the defendants of this lawsuit] resorted to, among other things, kidnapping Hunter, conspiring to kidnap Hunter, fraud, conniving, trickery, and abuse of judicial processes which put Hunter's body in harm's way and blocked her from a) pursuing her MTSA further, and b) re-opening the CFVCC MTSA so that Hunter could present new-found evidence of fraud, including but not limited to, extrinsic fraud in support of Hunter's MTSA.

20. Kalmanson testified under oath in February 2013 in an administrative hearing against Hunter.  The administrative hearing was substantially based on OCFCC case 2009-CA-037513.  Through deployment of extrinsic fraud tactics, Hunter was blocked from gaining knowledge of and access to this testimony or the testimony transcript until October 23, 2013.

21. Kalmanson testified about the OCFCC case 2009-CA-037513 in detail; and his testimony directly conflicts with affidavits he signed that were filed in OCFCC case 2009-CA-037513. His testimony was recorded by a court reporter.

22. Kalmanson testified that he knew a) on March 14, 2011, or soon after, that the judgments and court orders arising from OCFCC case 2009-CA-037513 were void, b) on April 12, 2011, or soon after, that the judgments and court orders arising from OCFCC case 2009-CA-037513 were void, and c) as early as 2010 that the judgments and court orders arising from OCFCC case 2009-CA-037513 were going to be void.  Kalmanson admitted that he was intimately involved with the legal strategy in OCFCC case 2009-CA-037513 from its inception.  He repeatedly used the word "we" to describe every decision made

in OCFCC case 2009-CA-037513. Kalmanson admitted that he was aware that Hunter had been "picked up" in Virginia [i.e. arrested] as a result of the OCFCC case.  He admitted that he personally endeavored to cause Hunter's arrest by [unlawful] use of the judicial processes in both the CFVCC MTSA and the OCFCC case 2009-CA-037513.   Kalmanson testified that Hunter had [allegedly] defamed him and that he never testified in person in OCFCC as to his damages [allegedly] caused by Hunter.  He testified that he did not attend a single hearing in OCFCC case 2009-CA-037513, that he is involved in many [different] court actions in which he makes court appearances and represents himself pro se, and that he directed his lawyer to go to court on his behalf to handle OCFCC case 2009-CA-037513.

23. Kalmanson testified that he has a good working knowledge of legal matters and declined to answer some questions posed to him during his testimony on the basis that the did not want to waive attorney-client privilege in OCFCC case 2009-CA-037513.

24. Kalmanson testified that he had no first-hand dealings with Hunter in the past which directly contradicted affidavits he signed that were filed in OCFCC case 2009-CA-037513. He testified:

> "Well, I had very little dealings with her. I think I spoke only one time with her; my office staff did."

34. Kalmanson testified that he based his OCFCC lawsuit against Hunter on a document he received from an unnamed third party that displayed a signature that he assumed was Hunter's which directly contradicted affidavits he signed that were filed in OCFCC case 2009-CA-037513.   He testified:

> "Q. Okay. Did Ms. Hunter actually execute a producer agreement?
> A. She did. I received one. I assumed that it was her personally. It had a signature that appeared to be hers.
> Q. Have you met the woman?

A. I have not."

35. The extent of damage Kalmanson claimed at the hands of Hunter, a business competitor who, according to Kalmanson's testimony offers insurance to the general public for much less than the cost LKAI offers, were "fewer calls" and that business dropped dramatically. Kalmanson could not offer a single, specific instance in which someone told Kalmanson specifically that he did not buy insurance from Kalmanson due to Hunter's alleged defamation.

36. Kalmanson testified that he could not quantify his damages which directly contradicted affidavits he signed that were filed in OCFCC case 2009-CA-037513. He testified:

> 6 A. Well I am out of pocket. I mean, it's a
>
> 7 business interruption and it's an unknown or
>
> 8 damages, if you would. Unfortunately, it's very
>
> 9 hard to quantify when I don't know if, you know,
>
> 10 Attorney Busch would ever call me because he read
>
> 11 this and he's like, well, I have a negative light on
>
> 12 them, I won't call them.
>
> 13 I can never quantify that, as opposed to we
>
> 14 average let's say ten calls a day or we have ten or
>
> 15 three -- I'm sorry ten or twenty policies a day, and
>
> 16 now we're down to two policies, so how much of that
>
> 17 was based on this negative defamation?[1]
>
> 18 Q. So you're reluctant to throw out a figure.
>
> 19 A. I'm very reluctant to throw out a figure.
>
> 20 Q. Okay.

---

[1] Florida law does not allow damages in defamation lawsuits to be determined by summary judgment.  The OCFCC case 2009-CA-037513 document that appears to show a judgment of nearly $10,000,000 shows that this OCFCC case and damages were disposed of by summary judgment.

21 A. Because I did that for Judge Blackwell, and

22 we used a -- I came up with an algorithm, if you

23 would, that you know substantiated the judgment.

37. Kalmanson testified that he gave Judge Blackwell [of OCFCC] an "algorithm" to determine his damages. But this statement contradicts Kalmanson's previous statement under oath that he did not attend a single hearing in OCFCC case 2009-CA-037513. Kalmanson did not explain how he gave Judge Blackwell an algorithm since he did not attend any hearings. Also, Judge Blackwell was not the judge who allegedly signed the document dated April 12, 2011, that awarded the OCFCC plaintiffs a judgment of nearly $10,000,000. Judge Blackwell was not commissioned to that specific court until 2012. Further, there is no time in history in which an algorithm was accepted by a court of law to determine damages, and Florida law requires a plaintiff to prove actual damages in, among other types of actions, defamation actions.

38. In about June 2012, the OCFCC plaintiffs re-opened the MTSA case despite the fact that they did not file the required motion to re-open and did not pay the required re-open clerk's fee. Subsequently, a second final order was entered by the CFVCC in June or July 2012.

39. Hunter was not aware that the CFVCC MTSA had been re-opened by the OCFCC plaintiffs. Hunter was not aware of the second final order until November or December 2012 after the time to file a timely appeal of the second final order had expired.

40. In August 2012, the OCFCC plaintiffs re-opened the MTSA case[2] again despite the fact that the OCFCC plaintiffs did not file the required motion to re-open and did not pay the required clerk's fee to re-open the CFVCC MTSA. The OCFCC plaintiffs asked the CFVCC trial court to order Hunter be

---

[2] The [first] final order in the CFVCC MTSA was entered in August 2011.

arrested, and she was arrested two times in Virginia for reasons arising from the void OCFCC judgment. Hunter was arrested and detained for about five hours in July 2012 and arrested and incarcerated for eight days from October 31, 2012, to November 8, 2012.  Hunter was arrested these two times because she had been found in contempt of court by the CFVCC at the request of the OCFCC plaintiffs for Hunter's failure to appear at hearings that were knowingly scheduled a) without jurisdiction, b) in the wrong venue, c) in violation of Supreme Court of Virginia ("SCV") Rules, d) without notification and e) without issuing a summons for Hunter to appear.  Subsequently, a third final order in the CFVCC MTSA was signed in January 2013 without Hunter's knowledge. The trial court judge signed the third final order in January 2013, but the Clerk of the CFVCC did not enter it for more than 90 days, after the time for filing a timely appeal to the SCV expired.

41. While Hunter was incarcerated from October 31, 2012, to November 8, 2012, the OCFCC plaintiffs violated Virginia statutes and served six local banks, randomly-chosen, with garnishment summonses demanding that they remit the funds from accounts held in Hunter's name, of up to the amount of the OCFCC judgment of nearly $10,000,000, within six days.

42. In about August 2012, the OCFCC found Hunter in civil contempt of court and criminal contempt of court, in her absence, at the request of the OCFCC plaintiffs. But the OCFCC plaintiffs did not notify Hunter of this request and did not summons Hunter to appear to defend herself.

43. The criminal contempt order fixed a punishment of about $85,000 and up to twelve (12) months in jail in Orange County Florida.  The OCFCC issued a capias to have Hunter arrested and directed all law enforcement in the United States to arrest Hunter to have her extradited to Florida.

44. The OCFCC plaintiffs sent letters to various law enforcement agencies in Virginia, in December 2012 and January 2013, [and on other dates]

1    requesting that they arrest Hunter and prepare her for extradition to

2    Florida.

3        45. Hunter received death threats and threats of harm for [allegedly]

4    "f__king" with Kalmanson.

5        46. In October 2013, Hunter learned through reliable Florida government

6    agency resources under the Florida Public Information Act that convicted

7    murders had escaped Florida prisons by filing fraudulent court orders in

8    OCFCC that authorized their pre-mature releases.

9        47. On November 6, 2013, the Florida Senate Committee on Criminal and

10   Civil Justice held a meeting to discuss these prison escapes. The minutes

11   from this meeting show that a decision was made to review over 7800 criminal

12   court orders to determine their authenticity.

13       48. During this Florida Senate committee meeting, it was publicly revealed

14   that the former Orange County Florida Circuit Court clerk, Ms. Lydia Gardner,

15   who had been the clerk of this OCFCC since 2001, had pioneered a drop-box

16   filing system whereby anyone could anonymously drop court orders to be filed

17   with the clerk of the OCFCC. Ms. Gardner died in May 2013. According to the

18   Commissioner of the Florida Department of Law Enforcement, "Due to lack of

19   good audit trails we are still trying to figure out how the documents got to

20   the Clerks [sic] office." See p. 100 of Florida Senate Meeting Packet from

21   November              2013              located              at:

22   http://www.flsenate.gov/PublishedContent/Committees/2012-

23   2014/ACJ/MeetingRecords/MeetingPacket_2365.pdf

24       49. Kalmanson and LKAI took advantage, like the aforementioned convicted

25   murders, of the OCFCC's anonymous drop-box filing system to file and obtain

26   fraudulent court documents to use against Hunter, who is Kalmanson and LKAI's

27   business competitor.

28

50. Kalmanson and LKAI have used the Florida and Virginia courts to enforce void CFVCC and OCFCC judgments and orders and have used, among other things, contempt hearings conducted without Hunter's knowledge to conspire to have her unlawfully detained and incarcerated based on void CFVCC and OCFCC judgments and orders. Kalmanson and LKAI have kidnapped Hunter in Virginia and have conspired to kidnap Hunter in Virginia and transport her against her will to Florida, relying only upon void OCFCC judgment documents and orders. Kalmanson's testimony in an administrative hearing held in February 2013 proves that Kalmanson explicitly and personally took actions in Florida to direct others to unlawfully take Hunter's body from Virginia and bring it to Florida against Hunter's will; and he based such authority to direct the taking of Hunter's body on fraudulent and void documents arising from OCFCC.

51. The OCFCC plaintiffs have done these things against Hunter for, among other things, personal financial gain and to unlawfully restrain interstate commerce.

52. In the OCFCC record, there are affidavits signed by Kalmanson that imply and portray LKAI as a national insurance agency who had suffered on a national basis at the hands of Hunter. However, I, Chase Carmen Hunter, personally used the online-public-information services offered by each state insurance regulator to view insurance licensee information for states within the contiguous United States of America on December 23, 2013; and prior to April 12, 2011, LKAI was legally authorized to transact insurance in no more than five states: California, Florida, Massachusetts, New Jersey, and Wyoming.

53. As of December 2011, Kalmanson was the only employee of LKAI who held a valid insurance license to transact insurance outside of Florida. And he may still be the only employee of LKAI who holds such a license.

54. Kalmanson asked Hunter in June or July 2011, if she had "insurance" to pay the [void] OCFCC judgment.

55. In August 2011, Kalmanson used an unlicensed Florida insurance adjusting agency to send about thirty-two (32) demand letters through the United States Postal Service, from Florida to Virginia, to various people including people who were not defendants in OCFCC case 2009-CA-037513, threatening them with legal penalties if they did not provide Kalmanson, personally, with their insurance policy information so that Kalmanson, personally as the complainant, could seek to satisfy the [void] OCFCC judgment from their insurance policies.

56. Kalmanson sent many written demands from Florida to Illinois to an insurance company demanding that the insurance company pay him personally to satisfy the fraudulent and void OCFCC case 2009-CA-037513 judgment.

57. Kalmanson asked Hunter in November 2012, after causing Hunter to be [kidnapped] unlawfully incarcerated for eight days, if she was "ready to file bankruptcy".

58. Kalmanson and LKAI knew, anticipated, foresaw, and intended, among other things, a) to damage Hunter' reputation, b) use void judgments to take Hunter's property, c) use void judgments to kidnap Hunter, d) use void judgments to cause Hunter's unlawful arrest, e) abuse judicial process and use judicial process unlawfully, f) impede interstate commerce, f) intentionally inflict emotional distress, g) use a void judgments to unlawfully collect insurance proceeds, and h) use void judgments in the spirit of obtaining property fraudulently through bankruptcy.

59. Kalmanson and LKAI have adversely affected Hunter's business and have caused psychological and emotional trauma and suffering.

60. Kalmanson and LKAI have caused, are causing, and will cause Hunter to suffer injury to her reputation, to her business, and to her psychological and emotional well-being.

## CLAIM FOR RELIEF I

55. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

56. Hunter is a repeated victim of intentional attempted mail fraud and intentional mail fraud which is set forth in 18 U.S.C. § 1341. While this section is labeled "CLAIM FOR RELIEF I", there are multiple counts of violations of 18 U.S.C. § 1341 in excess of fifty (50).

57. Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

58. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

## CLAIM FOR RELIEF II

59. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

60. Hunter is a repeated victim of intentional attempted wire fraud and intentional wire fraud which is 18 U.S.C. § 1343. While this section is labeled "CLAIM FOR RELIEF II", there are multiple counts of violations of 18 U.S.C. § 1343 in excess of fifty (50).

61. Kalmanson and LKAI are liable to Hunter.

62. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

## CLAIM FOR RELIEF III

63. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

64. Hunter is a repeated victim of a willful and intentional racket inflicted upon her by LKAI which is a Racketeer Influenced and Corrupt Organization which violates 18 U.S.C. § 1951. While this section is labeled "CLAIM FOR RELIEF III", there are multiple counts of violations of 18 U.S.C. §§ 1951.

65. Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

66. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF IV

67. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

68. Hunter is a repeated victim of a willful and intentional racket inflicted upon her by LKAI which is a Racketeer Influenced and Corrupt Organization which violates 18 U.S.C. § 1952. While this section is labeled "CLAIM FOR RELIEF IV", there are multiple counts of violations of 18 U.S.C. § 1952

69. Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

70. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF V

71. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

72. Hunter is a repeated victim of a willful and intentional racket inflicted upon her by LKAI which is a Racketeer Influenced and Corrupt

Organization which violates 18 U.S.C. § 1512(a)(2). While this section is labeled "CLAIM FOR RELIEF V", there are multiple counts of violations of 18 U.S.C. § 1512(a)(2).

73. Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

74. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

CLAIM FOR RELIEF VI

75. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

76. Hunter is a repeated victim of a willful and intentional racket inflicted upon her by LKAI which is a Racketeer Influenced and Corrupt Organization which violates 18 U.S.C. § 1512(b). While this section is labeled "CLAIM FOR RELIEF VI", there are multiple counts of violations of 18 U.S.C. § 1512(b).

77. Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

78. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

CLAIM FOR RELIEF VII

79. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

80. Hunter is a repeated victim of a willful and intentional racket inflicted upon her by LKAI which is a Racketeer Influenced and Corrupt Organization which violates 18 U.S.C. § 1512(c). While this section is

labeled "CLAIM FOR RELIEF VII", there are multiple counts of violations of 18 U.S.C. § 1512(c).

81. Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

82. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF VIII

83. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

84. Hunter is a repeated victim of a willful and intentional racket inflicted upon her by LKAI which is a Racketeer Influenced and Corrupt Organization which violates 18 U.S.C. § 1512(d). While this section is labeled "CLAIM FOR RELIEF VIII", there are multiple counts of violations of 18 U.S.C.§ 1512(d).

85. Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

86. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF IX

87. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

88. Hunter is a repeated victim of a willful and intentional racket inflicted upon her by LKAI which is a Racketeer Influenced and Corrupt Organization which violates 18 U.S.C. § 1513(b). While this section is labeled "CLAIM FOR RELIEF IX", there are multiple counts of violations of 18 U.S.C. § 1513(b).

89. Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

90. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF X

91. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

92. Hunter is a repeated victim of a willful and intentional racket inflicted upon her by LKAI which is a Racketeer Influenced and Corrupt Organization which violates 18 U.S.C. § 1962 et seq. While this section is labeled "CLAIM FOR RELIEF X", there are multiple counts of violations of 18 U.S.C. § 1962.

93. Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

94. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XI

95. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

96. Hunter is a repeated victim of violations of 15 U.S.C. § 1. While this section is labeled "CLAIM FOR RELIEF XI", there are multiple counts of violations of 15 U.S.C. § 1 in excess of fifty (50).

97. Kalmanson and LKAI are liable to Hunter as established by 15 U.S.C. § 15 which allows for recovery threefold of the damages sustained, the cost of suit, including a reason attorney's fee.

98. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

## CLAIM FOR RELIEF XII

99. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

100.   Hunter is a repeated victim of violations of 15 U.S.C. § 2. While this section is labeled "CLAIM FOR RELIEF XII, there are multiple counts of violations of 15 U.S.C. § in excess of fifty (50).

101.   Kalmanson and LKAI are liable to Hunter as established by 15 U.S.C. § 15 which allows for recovery threefold of the damages sustained, the cost of suit, including a reason attorney's fee.

102.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

## CLAIM FOR RELIEF XIII

103.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

104.   Hunter's Fourteenth Amendment rights have been repeatedly, knowingly and willfully violated. While this section is labeled "CLAIM FOR RELIEF XIII", there are multiple counts of violations of Hunter's substantive and procedural Fourteenth Amendment rights in excess of fifty (50).

105.   Kalmanson and LKAI are liable to Hunter.

106.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

## CLAIM FOR RELIEF XIV

107.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

108.   Hunter's Fourth Amendment rights have been repeatedly, knowingly, and willfully violated. While this section is labeled "CLAIM FOR RELIEF XIV",

there are multiple counts of violations of Hunter's Fourth Amendment rights in excess of fifty (50).

109.   Kalmanson and LKAI are liable to Hunter.

110.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XV

111.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

112.   Hunter is a victim of Kalmanson and LKAI's willful violations of 18 U.S.C. § 1033. While this section is labeled "CLAIM FOR RELIEF XV", there are multiple counts of violations of 18 U.S.C. § 1033 in excess of fifty (50).

113.   Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

114.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XVI

115.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

116.   Hunter is a victim of Kalmanson and LKAI's willful violations of 18 U.S.C. § 873. While this section is labeled "CLAIM FOR RELIEF XVI", there are multiple counts of violations of 18 U.S.C. § 873 in excess of fifty (50).

117.   Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

118.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

## CLAIM FOR RELIEF XVII

119.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

120.   Hunter is a victim of Kalmanson and LKAI's willful violations of 18 U.S.C. § 875(d). While this section is labeled "CLAIM FOR RELIEF XVII", there are multiple counts of violations of 18 U.S.C. § 875(d) in excess of fifty (50).

121.   Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

122.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

## CLAIM FOR RELIEF XVIII

123.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

124.   Hunter is a victim of Kalmanson and LKAI's willful attempts to violate 18 U.S.C. § 1201. While this section is labeled "CLAIM FOR RELIEF XVIII", there are multiple counts of attempts to violate 18 U.S.C. § 1201 in excess of twenty-five (25).

125.   Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

126.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

## CLAIM FOR RELIEF XIX

127.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

128.    Hunter is a victim of Kalmanson and LKAI's willful violations of Virginia Code § 18.2-47. While this section is labeled "CLAIM FOR RELIEF XIX", there are two counts of violations of Virginia Code § 18.2-47.

129.    Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

130.    Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

**CLAIM FOR RELIEF XX**

131.    Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

132.    Hunter is a victim of Kalmanson and LKAI's criminal conspiracies to violate 18 U.S.C. § 1201. While this section is labeled "CLAIM FOR RELIEF XX", there are multiple counts of criminal conspiracy to violate 18 U.S.C. § 1201 in excess of twenty-five (25).

133.    Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

134.    Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

**CLAIM FOR RELIEF XXI**

135.    Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

136.    Hunter is a victim of Kalmanson and LKAI's civil conspiracies to violate 18 U.S.C. § 1201. While this section is labeled "CLAIM FOR RELIEF XXI", there are multiple counts of civil conspiracy to violate 18 U.S.C. § 1201 in excess of twenty-five (25).

137.    Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

138.    Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXII

139.    Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

140.    Hunter is a victim of Kalmanson and LKAI's criminal conspiracies to violate Virginia Code § 18.2-47. While this section is labeled "CLAIM FOR RELIEF XXII", there are multiple counts of criminal conspiracy to violate Virginia Code § 18.2-47 in excess of fifty (50).

141.    Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

142.    Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXIII

143.    Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

144.    Hunter is a victim of Kalmanson and LKAI's civil conspiracies to violate Virginia Code § 18.2-47. While this section is labeled "CLAIM FOR RELIEF XXIII", there are multiple counts of civil conspiracies to violate Virginia Code § 18.2-47 in excess of fifty (50).

145.    Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

146.    Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXIV

147.    Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

148.    Hunter is a victim of Kalmanson and LKAI's actions under 42 U.S.C. § 1983. While this section is labeled "CLAIM FOR RELIEF XXIV", there are multiple counts of such actions in excess of fifty (50).

149.    Kalmanson and LKAI are liable to Hunter.

150.    Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXV

151.    Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

152.    Hunter is a victim of Kalmanson and LKAI's actions under 42 U.S.C. § 1985. While this section is labeled "CLAIM FOR RELIEF XXV", there are multiple counts of such actions in excess of fifty (50).

153.    Kalmanson and LKAI are liable to Hunter.

154.    Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXVI

155.    Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

156.    Hunter is a victim of Kalmanson and LKAI's actions under 42 U.S.C. § 1986. While this section is labeled "CLAIM FOR RELIEF XXVI", there are multiple counts of such actions in excess of fifty (50).

157.    Kalmanson and LKAI are liable to Hunter.

158.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXVII

159.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

160.   Hunter is a victim of Kalmanson and LKAI's willful actions under U.S.C. § 3. While this section is labeled "CLAIM FOR RELIEF XXVII", there are multiple counts of incidents of action under 18 U.S.C. § 3 in excess of fifty (50).

161.   Kalmanson and LKAI are liable to Hunter.

162.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXVIII

163.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

164.   Hunter is a victim of Kalmanson and LKAI's willful actions under 18 U.S.C. § 4. While this section is labeled "CLAIM FOR RELIEF XXVIII", there are multiple counts of actions under 18 U.S.C. § 4 in excess of fifty (50).

165.   Kalmanson and LKAI are liable to Hunter.

166.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXIX

167.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

168.   Hunter is a victim of Kalmanson and LKAI's willful actions under 18 U.S.C. § 241. While this section is labeled "CLAIM FOR RELIEF XXIX", there are multiple counts of actions under 18 U.S.C. § 241 in excess of fifty (50).

169.   Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

170.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXX

171.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

172.   Hunter is a victim of Kalmanson and LKAI's willful actions under of 18 U.S.C. § 242. While this section is labeled "CLAIM FOR RELIEF XXX", there are multiple counts of violations of 18 U.S.C. § 242 in excess of fifty (50).

173.   Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

174.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXXI

175.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

176.   Hunter is a victim of Kalmanson and LKAI's common law fraud against Hunter. While this section is labeled "CLAIM FOR RELIEF XXXI", there are multiple counts of incidents of common law fraud in excess of fifty (50).

177.   Kalmanson and LKAI are liable to Hunter.

178.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXXII

179.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

180.   Hunter is a victim of Kalmanson and LKAI's attempted bankruptcy fraud. While this section is labeled "CLAIM FOR RELIEF XXXII", there are multiple counts of attempted bankruptcy fraud in excess of fifty (50).

181.   Kalmanson and LKAI are liable to Hunter.

182.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### COUNT XXXIII

183.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

184.   Hunter is a victim of Kalmanson and LKAI's abuse of process. While this section is labeled "CLAIM FOR RELIEF XXXIII", there are multiple counts of abuses of process in excess of fifty (50).

185.   Kalmanson and LKAI are liable to Hunter.

186.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### COUNT XXXIV

187.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

188.   Hunter is a victim of Kalmanson and LKAI's tortious interference. While this section is labeled "CLAIM FOR RELIEF XXXIV", there are multiple counts of tortious interference in excess of fifty (50).

189.   Kalmanson and LKAI are liable to Hunter.

190.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXXV

191.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

192.   Hunter is a victim of Kalmanson and LKAI's conspiracies. While this section is labeled "CLAIM FOR RELIEF XXXV", there are multiple counts of conspiracies in excess of fifty (50).

193.   Kalmanson and LKAI are liable to Hunter as established by 18 U.S.C. § 1964(c) which states that Hunter shall recover threefold the damages sustained, the cost of the suit, including reasonable attorney's fee.

194.   Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

### CLAIM FOR RELIEF XXXVI

195.   Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

196.   Hunter is a victim of Kalmanson and LKAI's abuse of process as described herein.   In addition, Kalmanson and LKAI served process fourteen times upon ten (10) people in 2013 that they believed were associated with Hunter. Kalmanson and LKAI demanded that these people satisfy the void OCFCC judgment.   In 2013, Kalmanson and LKAI served three (3) people they believed were associated with Hunter with summonses threatening them with contempt of court and demanding that they answer to violations of non-existent laws. These recipients feared they would be jailed and fined, and lose their jobs and the good status in the community as a result. They also incurred costs, legal fees and time lost from work to answer in open court to the fabricated accusations against them. Once they appeared in court, the accusations against them were immediately dismissed but Kalmanson and LKAI continued the hearings to question the recipients and to conduct discovery into Hunter's life. This section is labeled "CLAIM FOR RELIEF XXXVI", but there are multiple counts of conspiracies in excess of fifteen (15).

197. Kalmanson and LKAI are liable to Hunter.

198. Hunter has suffered and will continue to suffer because of Kalmanson and LKAI's actions.

## RELIEF REQUESTED

199. Hunter realleges and incorporates by reference the allegations shown above as if set forth fully herein.

200. Hunter demands that a judgment be entered against the Defendants, jointly and severally, in favor of Hunter for compensatory damages as may be awarded at trial.

201. Hunter demands punitive damages in connection with CLAIMS FOR RELIEF 2-12, 15-23, 29, 30, and 35.

202. Hunter demands all economic and non-economic damages to which she is entitled.

203. Hunter demands pre-judgment and post-judgment interest on all CLAIMS FOR RELIEF.

204. Hunter demands that a declaratory judgment be issued and entered that explicitly sets forth that a) court orders arising from OCFCC case 2009-CA-037513 are void, b) court orders arising from OCFCC case 2009-CA-037513 are not enforceable, and c) all other relief to which Hunter is entitled.

205. Hunter demands that the Court award such other and further relief as the Court deems proper.

206. Hunter demands that the Court award Hunter her costs and fees, including attorney fees, and appellate fees, if any.

Respectfully submitted,

*cc fth*

Chase Carmen Hunter, pro se
Plaintiff
PO Box 42252
Fredericksburg, VA 22404
Tel: 707-706-3647

Fax: 703-997-5999
Email: Chase_Hunter@yahoo.com

IN WITNESS, Chase Carmen Hunter has signed this Affidavit below:

_____ (SEAL)

*Chase Carmen Hunter*

Commonwealth of Virginia

City/County of Spotsylvania, to-wit:

Subscribed and sworn to before me this 15 day of July 20 14,

by  Chase Carmen Hunter

My commission expires: July 31, 2015
Registration Number: 280992

*Virginia K. Burke*

30